UNITED STATES v. DAVIN et al.

(District Court, E. D. Washington, E. D.   June 3, 1911.)

No. 1,065.

1. ALIENS (§ 59*)—IMMIGRATION—HARBORING OF ALIEN PROSTITUTES—STATUTES—OFFENSES.

Act June 25, 1910, c. 395, § 6, 36 Stat. 826, requiring every person harboring, for immoral purposes, any alien female within three years after entry into the United States from any country which is a party to an arrangement for the suppression of the white slave traffic, to file within 30 days a statement with the Commissioner General of Immigration giving certain facts, requires only persons harboring alien females from the countries which are parties to the arrangement to file such statement, and an indictment charging a violation of the act which fails to show that a female so harbored is from one of such countries is fatally defective.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 59.*]

2. ALIENS (§ 40*)—IMMIGRATION—HARBORING ALIEN PROSTITUTES—STATUTES—OFFENSES.

Act June 25, 1910, c. 395, § 6, 36 Stat. 826, requiring every person harboring, for immoral purposes, any female alien, to file a statement with the Commissioner' General of Immigration containing enumerated facts, does not apply to those harboring alien women at the date of the passage of the act, at least where such harboring had already continued for more than 30 days.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 100; Dec. Dig. § 40.*]

3. ALIENS (§ 56*)—IMMIGRATION—HARBORING ALIEN PROSTITUTES—STATUTES—OFFENSES.

A person harboring, for immoral purposes, an alien female without filing with the Commissioner General of Immigration the statement required by Act June 25, 1910, c. 395, § 6, 36 Stat. 826, violates the act, though he is not also guilty of procuring the entry of the female into the United States.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 56.*]

G. V. Davin and another were indicted for violating the white slave traffic act.   Demurrer to both counts of the indictment sustained.

Oscar Cain, U. S. Atty.

Herbert C. Bryson, for defendants.

RUDKIN, District Judge.   The indictment in this case was returned under section 6 of the act of June 25, 1910 (Stat. 1909–10, p. 826), commonly known as the "White Slave Traffic Act," which reads as follows:

"That for the purpose of regulating and preventing the ·transportation in foreign commerce of alien women and girls for purposes of prostitution and debauchery, and in pursuance of and for the purpose of carrying out the terms of the agreement or project of arrangement for the suppression of the white slave traffic, adopted July twenty-fifth, nineteen hundred and two, for submission to their respective governments by the· delegates of various powers represented at the Paris conference and confirmed by a formal agreement signed at Paris on May eighteenth, nineteen hundred and four, and adhered to by the United States on June sixth, nineteen hundred and eight,

as shown by the proclamation of the President of the United States, dated June fifteenth, nineteen hundred and eight, the Commissioner General of Immigration is hereby designated as the authority of the United States to receive and centralize information concerning the procuration of alien women and girls with a view to their debauchery, and to exercise supervision over such women and girls, receive their declarations, establish their identity, and ascertain from them who induced them to leave their native countries, respectively; and it shall be the duty of said Commissioner General of Immigration to receive and keep on file in his office the statements and declarations which may be made by such alien women and girls, and those which are hereinafter required pertaining to such alien women and girls engaged in prostitution or debauchery in this country, and to furnish receipts for such statements and declarations provided for in this act to the persons, respectively, making and filing them.

"Every person who shall keep, maintain, control, support, or harbor in any house or place for the purpose of prostitution, or for any other immoral purpose, any alien woman or girl within three years after she shall have entered the United States from any country, party to the said arrangement for the suppression of the white slave traffic, shall file with the Commissioner General of Immigration a statement in writing setting forth the name of such alien woman or girl, the place at which she is kept, and all facts as to the date of her entry into the United States, the port through which she entered, her age, nationality, and parentage, and concerning her procuration to, come to this country within the knowledge of such person, and any person who shall fail within thirty days after such person shall commence to keep, maintain, control, support, or harbor in any house or place for the purpose of prostitution, or for any other immoral purpose, any alien woman or girl within three years after she shall have entered the United States from any of the countries, party to the said arrangement for the suppression of the white slave traffic, to file such statement concerning such alien woman or girl with the Commissioner General of Immigration, or who shall knowingly and willfully state falsely or fail to disclose in such statement any fact within his knowledge or belief with reference to the age, nationality, or parentage of any such alien woman or girl, or concerning her procuration to come to this country, shall be deemed guilty of a misdemeanor, and on conviction shall be punished by a fine of not more than two thousand dollars, or by imprisonment for a term not exceeding two years, or by both such fine and imprisonment, in the discretion of the court.

"In any prosecution brought under this section, if it appear that any such statement required is not on file in the office of the Commissioner General of Immigration, the person whose duty it shall be to file such statement shall be presumed to have failed to file said statement, as herein required, unless such person or persons shall prove otherwise. No person shall be excused from furnishing the statement, as required by this section, on the ground or for the reason that the statement so required by him, or the information therein contained, might tend to criminate him or subject him to a penalty or forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture under any law of the United States for or on account of any transaction, matter, or thing concerning which he may truthfully report in such statement, as required by the provisions of this section."

The first count of the indictment charges that the defendants "in the Eastern district of Washington, and within the jurisdiction of this court, did heretofore, to wit, on or about the 1st day of March, one thousand nine hundred and ten, and for about nine months thereafter, keep, maintain, control and harbor, at a certain house of prostitution known as the 'Idle Hour,' which house is located in Walla Walla, Washington, in the Eastern district of Washington, and within the jurisdiction of this court, a certain woman, to wit, Lizzie Bishop,

an alien prostitute who had entered the United States within three years prior to that date, for the purpose of prostitution, and did fail within thirty days after commencing to keep, maintain, control and harbor said Lizzie Bishop as aforesaid, to file with the Commissioner General of Immigration a statement, in writing, setting forth the name of such alien, the place at which she was kept, and all facts as to the date of her entry into the United States, the port through which she entered; her age, nationality and parentage, and the facts concerning her procuration to come to the United States, or any other statement in writing giving any facts whatever concerning said Lizzie Bishop."

The second count of the indictment is in all respects similar to the first except it charges that the defendants did, "on or about the 1st day of January, one thousand nine hundred and eleven, and for about three months thereafter, keep, maintain, control and harbor;" etc.

The sufficiency of the two counts in the indictment is challenged by demurrer on three several grounds: First, because it does not appear that the woman Lizzie Bishop entered the United States from any country which was a party to the agreement or arrangement for the suppression of the white slave traffic; second, because it appears from the indictment that the defendants commenced to keep, maintain, control, support, and harbor the said Lizzie Bishop more than 30 days prior to the passage of the act of June 25, 1910; and, third, because it does not appear that the defendants or either of them procured or induced the said alien woman to enter the United States. The first and third objections go to both counts in the indictment, and the second objection to the first count only.

[1] A reference to the proclamation of the President of June 15, 1908 (35 Stat. L. p. 1979), will show that the following foreign countries are parties to the project of arrangement for the suppression of the white slave traffic, viz., Germany, Belgium, Denmark, Spain, France, Great Britain, Italy, the Netherlands, Portugal, Russia, Sweden, Norway, and the Swiss Federal Council. It is only persons harboring alien women or girls from these countries, or such other countries as may adhere to such project of arrangement, that are required to file the statement in writing with the Commissioner General of Immigration, and an indictment failing to show that a woman or girl so harbored is from one of such countries is fatally defective. The first objection is therefore well taken as to both counts.

[2] The first count of the indictment further charges that the defendants commenced to harbor the alien woman in question on or about March 1, 1910, and failed to file the required statement within 30 days thereafter, whereas the act was not passed until June 25th of that year. It will thus be seen that the time for filing the statement had expired long before the passage of the act requiring or authorizing it, and it was therefore impossible for the defendants to comply with the statute. It would perhaps have been competent for Congress to have required the filing of a statement by persons harboring alien women or girls at the time of the passage of the act, within a time

to be fixed by Congress, but the act in question contains no such provision. It is therefore apparent that the act was not intended to apply to those who were harboring alien women at the date of its passage, at least where such harboring had already continued for a period of more than 30 days. The second objection to the first count is also well taken.

[3] The contention that the persons harboring women or girls within the meaning of the statute must also be procurers in their entry into the United States is not well taken. The requirement of the statute is general, and includes all persons harboring alien women or girls of the prescribed class, and the fact that they are not also guilty of procuration is immaterial.

For the reasons stated, the demurrer as to both counts of the indictment is sustained.